IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:20-cv-00285-MOC-WCM

| | |
|---|---|
| DUSTIN NORTON, | ) |
| Plaintiff, | ) |
| v. | ) MEMORANDUM AND |
| | ) RECOMMENDATION |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | ) |
| Defendant. | ) |

This matter is before the Court on the parties' cross motions for summary judgment (Docs. 12, 14), which have been referred to the undersigned pursuant to 28 U.S.C. § 636 for the entry of a recommendation.

I. Procedural Background

In August of 2018, Plaintiff Dustin Norton ("Plaintiff") filed an application for disability insurance benefits, alleging disability beginning February 20, 2018. Transcript of the Administrative Record ("AR") 159-160.

On December 13, 2019, following an administrative hearing at which Plaintiff appeared and testified, an Administrative Law Judge ("ALJ") issued an unfavorable decision. AR 7-25. That decision is the Commissioner's final decision for purposes of this action.

1

## II. The ALJ's Decision

The ALJ found that Plaintiff had the severe impairments of "osteoarthritis, spine disorders, chronic venous insufficiency, peripheral artery disease, and obesity." AR 12. After determining that Plaintiff's impairments did not meet or medically equal one of the listed impairments, the ALJ found that Plaintiff had the residual functional capacity ("RFC"):

> to perform sedentary work…except pushing and pulling are limited to occasional in the bilateral lower extremities. Can climb ramps and stairs occasionally but never climb ladders, ropes, or scaffolds. Can balance, stoop, kneel, crouch, and crawl occasionally. Handing [sic] and fingering are limited to frequent in the bilateral upper extremities. Should avoid all exposure to unprotected heights, moving mechanical parts, and other workplace hazards. Must use a hand-held assistive device, in this place a cane, held in the right upper dominate extremity to be used at all times while walking.

AR 13.

Applying this RFC, the ALJ found that from February 20, 2018 through the date of the ALJ's decision, Plaintiff had the ability to perform certain jobs that existed in significant numbers in the national economy such that Plaintiff was not disabled. AR 19-20.

## III. Plaintiff's Allegations of Error

Plaintiff contends that the ALJ erred in rejecting Plaintiff's testimony regarding his symptoms and that the ALJ developed an RFC that was not supported by substantial evidence.

## IV. Standard of Review

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1505; 416.905; see also 20 C.F.R. § 404.350(a)(5) (child benefits). The regulations require the Commissioner to evaluate each claim for benefits using a five-step sequential analysis. 20 C.F.R. §§ 404.1520; 416.920. The burden rests on the claimant through the first four steps to prove disability. Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). If the claimant is successful at these steps, then the burden shifts to the Commissioner to prove at step five that the claimant can perform other work. Mascio v. Colvin, 780 F.3d 632, 635 (4th Cir. 2015); Monroe, 826 F.3d at 180.

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and whether the Commissioner's final decision applies the proper

legal standards. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). When a federal district court reviews the Commissioner's decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). Accordingly, the issue before the Court is not whether Plaintiff is disabled but, rather, whether the Commissioner's decision that he is not disabled is supported by substantial evidence in the record and based on the correct application of the law. Id.

V. Discussion

A. Evaluation of Symptoms

When evaluating a claimant's symptoms, an ALJ must use the two-step framework set forth in 20 C.F.R. §§ 404.1529 and/or 416.929 and SSR 16-3p, 2016 WL 1119029 (March 16, 2016).

First, the ALJ must determine whether objective medical evidence presents a "medically determinable impairment" that could reasonably be expected to produce the claimant's alleged symptoms. See 20 C.F.R. § 404.1529(b); SSR 16-3p, 2016 WL 1119029, at *3.

Second, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled. See 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 WL 1119029, at *4. The Fourth Circuit has recognized that "[a]t this step,

4

objective evidence is not required to find the claimant disabled." <u>Arakas v. Commissioner, Social Security Administration</u>, 983 F.3d 83, 95 (4th Cir. 2020).

Here, Plaintiff testified that he did not believe he would be able to do a "desk-type job" because of back pain and numbness in his fingers. AR 43. He additionally testified that he could sit for "about 30, 35 minutes" before needing to move, could stand for about 10 minutes, and that his "back doctor" told him to not lift more than a gallon of milk "when they did the surgery." AR 48. When discussing the numbness in his fingers, Plaintiff testified that "they've gotten a little better since the [anterior cervical discectomy and fusion] surgery, but the doctor said that it might be something that [Plaintiff] will never get the full use of back again." AR 44. Later in the hearing, Plaintiff also testified that his "left hand gets numb and I don't really do as much as I used to anymore." AR 49.

In considering Plaintiff's subjective complaints, the ALJ found Plaintiff "does not have a medially [sic] determinable impairment or combination of impairments that would be expected to result in restrictions in the performance of sedentary work" and explained:

> The claimant was routinely observe[d] to walk with a mild to moderate limp with the assistance of a cane. He testified that he was able to drive and go on short shopping trips. The claimant is also able to care for two children when his wife is working, which can be quite demanding both physically and emotionally, without any particular assistance reported. In view of the

5

Case 1:20-cv-00285-MOC-WCM   Document 17   Filed 11/08/21   Page 5 of 13

> foregoing, the undersigned concludes that the claimant's allegations of disabling pain and other symptoms are not entirely consistent with or supported by the totality of the evidence.

AR 18.

Plaintiff argues that his medical records support his alleged limitations due to back, neck, and knee pain, and that the ALJ improperly relied on Plaintiff's testimony regarding certain daily activities to discount his symptoms and "disregarded" Plaintiff's testimony regarding hand numbness. Doc. 13 at 17, 18-20.

"A claimant's inability to sustain full-time work due to pain and other symptoms is often consistent with [his] ability to carry out daily activities." Arakas, 983 F.3d at 101. Thus, "[a]n ALJ may not consider the type of activities a claimant can perform without also considering the extent to which [he] can perform them." Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018).

Consequently, "an ALJ must explain how he determined that performing a certain activity for a short period translates into an ability to perform a different activity for a full workday." Reinhardt v. Colvin, No. 3:14–cv–00488–MOC, 2015 WL 1756480, at *4 (W.D.N.C. Apr. 17, 2015); see also Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 263 (4th Cir. 2017) (finding an ALJ erred by discrediting a claimant's symptom testimony based on "daily activities" where the "ALJ did not acknowledge the extent of those activities"

and "provided no explanation as to how those particular activities ... showed that he could persist through an eight-hour workday").

In this matter, it appears that the ALJ's primary reason for discounting Plaintiff's testimony regarding his pain was Plaintiff's reported daily activities. However, the ALJ did not explain how Plaintiff's ability to drive, go on short shopping trips, or care for his children while his wife worked translated into a finding that Plaintiff could work for an eight-hour day.

Further, while the ALJ cited certain medical records reflecting that Plaintiff was observed to walk with a mild to moderate limp with the assistance of a cane, see AR 14-15 (citing AR 655-658, AR 726-731, AR 992-998), the ALJ did not explain how such medical records were inconsistent with Plaintiff's testimony regarding hand numbness.[1]

Therefore, the undersigned will recommend remand on this basis.

---

[1] When discussing Plaintiff's testimony, the ALJ stated that Plaintiff "testified that his fingertips got numb; however, they had gotten better since after surgery." AR 14. The ALJ did not acknowledge Plaintiff's later testimony that his left hand continued to "get numb" even after Plaintiff's surgery. See AR 49. Although the ALJ ultimately limited Plaintiff to "frequent handling and fingering with the upper extremities bilaterally," the ALJ cited only one medical record regarding sensation in Plaintiff's upper extremities and did not explain how a limitation to frequent handling and fingering addressed Plaintiff's allegation of hand numbness. See AR 16 (citing AR 826-828).

### B. Plaintiff's RFC

In formulating an RFC, an ALJ is not required to discuss every piece of evidence. See Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014). The ALJ is required, however, to build "an accurate and logical bridge from the evidence to his conclusion" that a plaintiff's RFC sufficiently accounts for his or her limitations. See Woods, 888 F.3d at 694 (in formulating the RFC, the ALJ "must both identify evidence that supports his conclusion and build an accurate and logical bridge from that evidence to his conclusion"); see also Mayberry v. Berryhill, No. 5:17-cv-175-GCM, 2018 WL 3543085, at *3 (W.D.N.C. July 23, 2018) ("A failure to provide an adequate explanation frustrates the ability of the Court to conduct meaningful review and determine whether the ALJ's decision is supported by substantial evidence"); Darby v. Berryhill, No. 1:16cv366-RJC, 2018 WL 310136, at *6 (W.D.N.C. Jan. 5, 2018) ("if the ALJ shows her work, then the Court will most likely find substantial evidence supporting her ultimate conclusion").

Here, Plaintiff argues that although the ALJ limited Plaintiff to frequent handling and fingering, he did not explain how he reached that conclusion. Additionally, Plaintiff asserts that the ALJ failed to assess the impact of Plaintiff's sleep apnea, obesity, or need to elevate his legs. See Doc. 13 at 20-24.

As discussed above, the undersigned agrees with Plaintiff that the ALJ did not explain his conclusion that Plaintiff was limited to frequent handling and fingering.

With respect to Plaintiff's sleep apnea, the ALJ acknowledged that Plaintiff had been diagnosed with "obstructive sleep apnea" but explained that Plaintiff did not require a CPAP machine and that records from his medical providers "consistently note[d] that [Plaintiff] has required no treatment and his symptoms seemed to improve after he stopped smoking." AR 12. The ALJ cited specific records to support this conclusion. See AR 12 (citing AR 688 (treatment record stating sleep apnea was diagnosed but not treated; "seemed to improve after quitting smoking") AR 296 (same), AR 952 (Plaintiff reported that he "sleeps good and does not feel he needs the CPAP")).[2] Further, Plaintiff does not cite to any functional limitations purportedly stemming from his sleep apnea.

Similarly, Plaintiff does not argue that the ALJ failed to account for any specific functional limitations stemming from his obesity. See Henson v. Berryhill, No. 1:15-cv-123-RJC, 2017 WL 5195882, at *5 (W.D.N.C. Nov. 9,

---

[2] Plaintiff points to a May 3, 2019 treatment note reflecting "Patient states he did the sleep study and turned it in on 12/14. Patient states he did have a hard time sleeping with the mask on." AR 946. Plaintiff argues that this note is contradictory to the ALJ's statement that his sleep apnea was never treated. Doc. 13 at 23. This note, however, appears to indicate only that Plaintiff participated in a sleep study.

9

2017) (an ALJ's failure to mention a claimant's obesity was excused because the claimant failed to list obesity in her application for disability benefits and, critically, the ALJ relied on medical records that adequately portrayed claimant's obesity); Barnes v. Astrue, No. 1:11CV285-MR-DSC, 2012 WL 5457348, at * 3 (W.D.N.C. Oct. 16, 2012), report and recommendation adopted, 2012 WL 5457482 (W.D.N.C. Nov. 8, 2012) ("Plaintiff has the burden of showing that the ALJ failed to address evidence in the record indicating limitations resulting from her obesity").

Finally, with respect to Plaintiff's need to elevate his leg(s), the ALJ acknowledged that, in conjunction with Plaintiff's diagnosis of chronic venous insufficiency, "[s]pecial elastic compression stockings and exercise such as walking, and leg elevation were recommended." AR 16 (citing, inter alia, AR 705-709)). Although the ALJ "considered [Plaintiff's] chronic venous insufficiency in limiting him to sedentary work," id., the ALJ did not discuss whether Plaintiff needed to elevate his legs or if leg elevation was consistent with sedentary work. See e.g., Hall v. Berryhill, No. 3:17-CV-00285-MOC, 2018 WL 1463702, at *3 (W.D.N.C. Mar. 23, 2018) (finding that the ALJ erred where he did "not explain why he did not include the need for above-waist elevation or why claimant's testimony in that regard was not credible").

Accordingly, upon remand, the undersigned additionally recommends that the ALJ consider further Plaintiff's possible need to elevate his leg(s).

10

Case 1:20-cv-00285-MOC-WCM   Document 17   Filed 11/08/21   Page 10 of 13

### C. Plaintiff's Notice of Supplemental Authority

On August 24, 2021, Plaintiff filed a "Response Brief in Support of Motion for Summary Judgment" directing the Court to the recent Supreme Court cases of Collins v. Yellen, 141 S.Ct. 1761 (2021) and Seila Law, LLC v. Consumer Financial Protection Bureau, 140 S.Ct. 2183 (2020). Doc. 18. As an exhibit to the filing, Plaintiff attached a Memorandum Opinion for the Deputy Counsel to the President (the "Memorandum Opinion") which purports to state that the President may remove the Commissioner of Social Security at will and that the statutory removal restriction in 42 U.S.C. § 902(a)(3) is constitutionally unenforceable. Doc. 16-1.

Plaintiff contends that "the Supreme Court decided a case and the Office of Legal Counsel published [the Memorandum Opinion] finding the structure of the Social Security Administration unconstitutional." Doc. 16 at 1. However, Plaintiff does not make any further argument regarding Collins, Seila Law, or the Memorandum Opinion, and instead proceeds to respond to the Commissioner's Motion for Summary Judgment and argue that there is no substantial evidence to support the ALJ's decision. Doc. 16 at 1-6. See Parker v. Saul, No. 3:20cv539-GCM, 2021 WL 4596340 at *1 (W.D.N.C. Oct. 6, 2021) (declining to consider the submission of this supplemental authority where Plaintiff failed "to make any showing or argument as to how either case or the memorandum opinion supports Plaintiff's argument that the Commissioner's

11

decision on his disability claim was incorrect") (citing Haperin v. Saul, 855 Fed. Appx. 114, 120 n.8 (4th Cir. Apr. 6, 2021) (A party "waives an argument by … failing to develop its argument—even if its brief takes a passing shot at the issue") (internal citations omitted); Whiteside v. Berryhill, No. 1:18-CV-00176-FDW, 2019 WL 1639936, at *3 (W.D.N.C. Apr. 16, 2019); Sanders v. Berryhill, No. 1:16-CV-0236-MOC-DLH, 2017 WL 3083730, at *3 (W.D.N.C. June 12, 2017) ("It is not the role of this Court to recraft a legal argument submitted by counsel or make counsel's legal argument for him or her; this Court's role is to rule on the specific legal arguments presented by counsel")).

## VI. Recommendation

Based on the foregoing, the undersigned respectfully **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Doc. 12) be **GRANTED**, and that the Commissioner's Motion for Summary Judgment (Doc. 14) be **DENIED.**

Signed: November 8, 2021

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636, and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).